Ford H. Swimmer Jr.
700 Conley Lake Road
Deerlodge, Mont.
59722

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION,

Ford H. Swimmer Jr., Petitioner,

v.

Lake County, Montana, Respondent,

Cause No. _____

Petition for Habeas Corpus, 28, U.S.C. 2254

I, Ford Swimmer Jr., am the petitioner in this cause, persuant to 28, U.S.C. section 2254, citing;

<u>McGirt v. Oklahoma, 140 S. CT. 2452, (2020)</u>
"State of Oklahoma lacked jurisdiction to prosecute an enrolled member of the Seminole Nation who's crimes took place on the Creek Reservation because for purposes of the Major Crimes Act, land reserved for the Creek Nation since the 19th century remained Indian Country under <u>18, U.S.C.S. section 1153(a)</u> and only the Federal Government could prosecute Indians for major crimes committed in Indian Country,(2) once a reservation was established, it retained that status untill Congress explicitly indicated otherwise, and Congress acting during the allotment era, did not end the Creek Reservation, nor were historical practices and demographicsenough by themseves to prove disestablishment."

Montana has always been a disclaimer state. Congress has never revoked Article ! Compact with the United States, which reads, "All provisions of the Enabling Act of Congress (approved Feb. 22, 1889 <u>25 Stat. 676</u>) as ammended and of ordinance No.1, appended to the Constitution of the State of Montana and approved Feb. 22, 1889, including the agreement and declaration that all lands owned or held by any Indian or Tribes shall remain under the absolute jurisdiction and control of the Congress of the United States, continue in full force and effect untill revoked by the consent of the United States and the people of Montana."

From it's inception, <u>Public Law 280</u> engedered criticism from both the State and the Tribes. The State Government resented the fact that they were given the duty of law enforcement without the means to pay for it. Congress niether appropriated funds for that purpose nor rendered Indian lands taxable by the states, the ultimate results of these criticisms were a group of ammendments to Public Law 280, that were passed as part of the Indian Civil Rights Actof 1968. These amendments permitted states to retrocede jurisdiction to the Federal Government and also provide that no states in the future could assume jurisdiction without Tribal consent.

Public Law 280 should never have been allowed on the Flathead Indian Reservation. Because it was a non- Indian living on or near the reservation who believed that law enforcement on the Indian Reservation had broken down, and urged the State to introduce Public Law 280. See <u>Goldberg, Public Law 280</u>. The limits of State jurisdiction over Reservation Indians, 22 S.C.L.A., Rev. 535,541, (1975).

As a disclaimer, State Congress expressly gave its consent in section 6 of Public Law 280, "to the people of any state to amend 'where necessary', their State Constitution or existing statutes as the case may be to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this act", Public Law 280, sec. 6, 67 Stat. 588, 590, (1953)

Perhaps the greatest criticism of Public Law 280 is that it permitted the states to assume jurisdiction without the consent of the concerned tribes. Congress reacted to this criticism in the Indian Civil Rights Act of 1968 by amending Public Law 280 to provide that no State could assume jurisdiction therafter without the consent of the tribe or tribes concerned.(25U.S.C.A. sec.1321(a), 1322(a) This consent may be obtained only by a majority vote of the adult Indians of the tribe in a special election. The Montana Legislature passed Senate Bill 310 in May of 2017 withdrawing felony jurisdiction from the State of Montana. In 2023 the Lake County commisioners held a special election to officialy withdraw from Public Law 280, pursuant to

the Indian Civil Rights Act of 1968. A series of events have come together now that the Tribe has passed Senate Bill 310 asking the State to relinquish criminal jurisdiction on the Flathead Indian Reservation and that the Lake County commissioners voted to abolish Public Law 280 and the tax payers refused to fund a new jail for Lake Countyand that the Governor only allowcated Lake County $1.00 (one dollar), it's obvious everyone wants Lake County to leave. If the State attempts to remain on the Flathead Indian Reservation, pursuant to the Indian Civil Rights Act of 1968, let the Indian people vote and decide if they want the State of Montana to remain on the Reservation. It is the Indian People who should have been allowed to vote in 1964, not the Montana legislature. The legislature are not enrolled Native American members of the Flathead Indian Reservation. Public Law 280 has always engendered a lot of criticism from the Native American Indian. However,Congress in its 1968amendments provided a method for the States to return Public Law 280 jurisdiction to the federal government. The United States was authorized to accept a retrocession by any state of all or any measure of criminal jurisdiction aquired by the state pursuant to Public Law 280, 25 U.S.C.A. section 1323(a). The President thereupon designated the Secretary of the Interior to exercise the discresionary power of the United States to accept retrocession of jurisdiction, Exec.order, 11435,33, Fed. reg. 17339(1968)see also; State v. Wabashaw, 740,n.w.2d.583,(Neb.2007). Similar to Montana, see; United States v. Lawrence, 595, f2d.1149(9th cir. 1979)
A different question arrose when Nebraska, by legeslative act, offered to retrocede jurisdiction over to the Omaha and Winnebago Reservations. The Secretary accepted the retrocession of the Omaha Reservation but not the Winnebago. Nebraska contended that the retrocession was invalid because the secretary acceptance deviated from the State's offer. The contention was rejected and the retrocession of jurisdiction over the Omaha reservation was held valid see; Omaha Tribe of Nebraska v. Village of Walthill 460, f2d, 1327 (8th Circ. 1972)

## Conclusion

In 2017, State Senator Lea Whitford introduced Senate Bill 310, which passed into law in May of 2017 and legaly withdraws the Flathead Indian Reservation from state felony jurisdiction. Misdemeanor jurisdiction was withdrawn in 1993. The Lake County commissioners held a vote in December of 2022 to withdraw from Public Law 280, the tax payers denied a bond issue to build a new jail, the Indian People refused to fund a new jail, the Governor of this state only appropriated $1.00 (one dollar) for Lake County. It's obvious that everyone wants the State of Montana to leave the Flathead Indian Reservation.

In 1855, the Hellgate Treaty was held with the Flathead Indian people, giving the Flathead peoples and their direct decendants the land that is now the Flathead Indian Reservation. Pursuant to Article 1, "Compact with the United States", all provisions of the enabling act of Congress(approved February 22, 1889; 25 Stat.676) as amended and of ordinance No.1 appended to the Constitution of the State of Montana and approved Feb.22, 1889, including the agreement and declaration"that all lands owned or held by any Indian or Indian Tribes shall remain under the absolute jurisdiction and control of Congress of the United States, continue in full forceand effect untill revoked by the consent of the United States and the people of Montana."

With respect to the term "people of Montana", since the Indian Civil Rights Act of 1968, the term has been changed significantly to"the adult people of the Flathead Indian Reservation." It is the Indian People and their direct decendants who should have made the decision in 1964 to allow Public Law 280, not the Montana legislature. It was a non-Indian that decided the Flathead Indian people needed Public Law 280 as well as a non-Indian Montana Legeslature who voted to allow Public Law 280. It should have been the Indian People who made this decision for the Indian People.

When the Indian People held and agreed to the Hellgate treaty of1855, the Indian People believed that this land will always remain theirs, not to be shared with non-Indians by introducing Public Law 280 by a non-Indian. See; <u>Confederated Salish and Kootenai Tribes v. Namen</u> D.C. Mont.1974,380,F.Supp.452,Affirmed

courts had jurisdiction over such cases before PL 280 was passed and that in essence, PL 280 simply had nothing to do with the case. The court nevertheless remanded to the State Supreme Court because that court's jurisdictional ruling might have been based on erroneous views that PL 280 govorned. On remand, the Supreme Court adhered to the view that the state courts had no jurisdiction. It held that under state law such cases could be brought only if the Tribe consented to full State jurisdiction on its reservation. And if the Tribbe waived its soveriegn immunity. The United States Supreme Court then reversed <u>Fort Brthold II</u>, 476.

The Hellgate Treaty of 1855, Artical 1, "The said Confederated Tribe of Indians hereby cede, relinquish and convey to the United States all their rights, title and interest in and to the country occupied or claimed by them, bounded and describrd in the treaty."

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, the petitioner has provided a complaint that states a claim for relief, asking this court to vacate his sentence by Lake County as Lake County has never legaly introduced PL 280 to the Flathead Indian Reservation. Under Federal Rules of Civil Procedure 8(a)(2) This complaint contains factual matter leaning on the 1885 Hellgate Treaty that the Flathead Indian Reservation was meant for the families of the Indian People and their direct decenants to enjoy, not for Public Law 280 to allow non-indians to take advantage of. The right decision is to vacate the sentence which Lake County handed down.

Dated this 23rd Day of MAY, 2023